UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABRAHAM JOSE SHIERA-BASTIDAS | Criminal Case No.:  1:15-MJ-03604-EGT-1 |

### DEFENDANT ABRAHAM SHIERA'S MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE

COMES NOW Defendant ABRAHAM JOSE SHIERA-BASTIDAS ("Mr. Shiera"), by and through undersigned counsel and pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3142, and respectfully requests that the Court grant him release pending trial in the Southern District of Texas.  In support, Defendant states:

### ARGUMENT AND MEMORANDUM OF LAW

### INTRODUCTION

The Bail Reform Act of 1984 commands that a defendant is entitled to bail pending trial unless "*no condition or combination of conditions* will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(e) (emphasis added).  To the extent conditions are appropriate, a judicial officer must take care to select "*the least restrictive* . . . condition, or combination of conditions" that will reasonably assure appearance.  *Id.* at § 3142(c)(1)(B) (emphasis added).

Because a condition or combination of conditions would reasonably assure Mr. Shiera's appearance at trial, both the Bail Reform Act and the Constitution prohibit pretrial detention of

1

Mr. Shiera.  As the Supreme Court has admonished, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

The Pretrial Services Report ("PTR") in this case recommends pretrial release on a corporate surety bond with a Nebbia condition, cosigned by Mr. Shiera's wife and other cosigners, along with other specific restrictions.  The Court should follow this recommendation and order Mr. Shiera's pretrial release.  As discussed below and reflected by the PTR, Mr. Shiera is a respected businessman living in Florida in the same household as his entire immediate family, other than his adult sons.  Mr. Shiera's wife, 5 year-old son, who is a U.S. citizen, and 14-year-old step-son, all live in that household with him.   In addition, his principal place of residence is in the United States, as are his principal business interests, each of which has substantial property and assets in the United States.  Even if such factors were insufficient to warrant immediate release—although we believe that they are—any combination of available bail conditions would reasonably assure Mr. Shiera's appearance at trial, including a financial bond in an amount to be set by the Court, co-signed and collateralized, pretrial reporting and/or monitoring as required by the Court, and the surrender of all travel documents.  These conditions are in line with the pretrial release recommendation contained in the PTR.  These conditions are also in line with pretrial release conditions imposed on similarly situated defendants in the Southern District of Florida and across the country, as discussed below, and would be more than sufficient to meet the standard for pre-trial release under the Bail Reform Act and the U.S. Constitution.

To be sure, Mr. Shiera was indicted by the grand jury for the Southern District of Texas, and charged essentially with violating the Foreign Corrupt Practices Act and engaging in money

laundering related to that crime. Apart from the unproven allegations in the Indictment, however, Mr. Shiera has never been involved in any criminal proceeding—not even a minor violation, and has very substantial ties to the community. All of the factors to be considered under the Bail Reform Act and U.S. Constitution militate strongly in favor of pre-trial release, particularly when considered in the context of the bail package set forth at length below.

## REASONS THE APPLICATION SHOULD BE GRANTED

I.  **MR. SHIERA IS NOT A FLIGHT RISK, AND THE PROPOSED PRETRIAL RELEASE CONDITIONS WOULD REASONABLY ASSURE HIS IN-COURT APPEARANCE**

The U.S. Supreme Court has previously explained that "[f]rom the passage of the Judiciary Act of 1789 . . . to the present . . . federal law has unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction . . . Unless this right to bail before trial is preserved, the presumption of innocence secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle,* 342 U.S. 1, 4 (1951). Consistent with these basic principles, the Bail Reform Act *presumes* release unless the government meets its burden of proving that Mr. Shiera is a serious flight risk *and* that no combination of conditions would reasonably assure his appearance at trial. *See* 18 U.S.C. § 3142(e); *United States v. Ceballo*, No. 12-80211-CR-Hurley/Hopkins, 2012 U.S. Dist. LEXIS 184999 *14-15 (S.D. Fla. Dec. 14, 2012). *See also United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). The Bail Reform Act further provides that if conditions are to be applied, they must be the "least restrictive" required. 18 U.S.C. § 3142(c)(1)(B). *See also United States v. Price*, 773 F.2d 1526, 1528 (11th Cir. 1985).

3

As to the first factor—the risk of flight—even without the proposed bail package, we would be constrained to point out that opportunity to flee—assuming *arguendo* one even exists—is not equivalent to proclivity to flee. *See United States v. Himler*, 797 F.2d 156, 162 (3d Cir. 1986) (reversing detention order and finding that the "[m]ere opportunity for flight is not sufficient grounds for pre-trial detention."). Mr. Shiera's conduct in this case—and prior to this case—fails to offer even a scintilla of evidence suggesting that he has the proclivity to flee. And without the proclivity to flee, not even an opportunity to flee would warrant pre-trial detention.

As stated above, even if there were a proclivity to flee—which there plainly is not—that does not justify pre-trial detention. The Bail Reform Act makes crystal clear that a finding of "flight risk" is only the beginning of the analysis, not the end. The statute unequivocally requires that even if a court does make a "flight risk" determination, that court must still consider whether there are conditions of pretrial release that will nevertheless reasonably assure the defendant's appearance. 18 U.S.C. § 3142(e).

In *United States v. Berrios-Berrios*, 791 F.2d 246, 251 (2d Cir. 1986), the Second Circuit reversed the district court's pretrial detention order because it failed "to explain on the record the extent to which it considered any alternatives to incarceration and, if so, on what basis they were rejected." *Id*. As the court explained, "[c]onsideration of such alternatives is no less important because the district court found that Berrios poses a risk of flight; many courts have set bail for defendants despite their propensity to flee." *Id*.

Additionally, "[t]he standard is reasonably assure appearance, not 'guarantee' appearance, and . . . detention can be ordered on this ground only if 'no condition or combination of conditions will reasonably assure the appearance.'" *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) (quoting the Bail Reform Act). If the government needed to show

4

merely that release conditions could "guarantee" a defendant's appearance, "the burden on the government in most cases to show a defendant's dangerousness and flight propensity would be lessened considerably[.]" *United States v. Orta*, 760 F.2d 887, 892 (8th Cir. 1985). And finally, as the Eighth Circuit has explained, "[t]he structure of the [Bail Reform Act] mandates every form of release be considered before detention may be imposed." *Orta*, 760 F.2d at 892. *See also United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (reversing detention order although defendant was an Iranian citizen who had access to large amounts of money in foreign nations and he stood accused of exporting military items to Iran, finding that "[r]elease pending trial is governed by the Bail Reform Act of 1984 which . . . mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required.").

Similarly, in *United States v. Sabhnani*, 493 F.3d 63 (2d Cir. 2007), the Second Circuit reversed the District Court's holding that no conditions would assure the appearance of wealthy defendants who had multiple international ties to Europe and the Middle East. Even more than those enjoyed by Mr. Shiera, the defendants in *Sabhnani* allegedly had "vast financial resources" and "personal and professional contacts with numerous foreign countries," including the Kingdom of Bahrain, Qatar, and the United Arab Emirates, countries with which the United States has no extradition treaties. In the District Court's initial determination that pretrial detention was proper, the Judge explained that home detention was impracticable due the cost of monitoring the defendants' children. However, the Second Circuit found that, while the District Court did not err in finding risk of flight, it did err in finding by a preponderance of the evidence that no conditions would secure the defendants' appearance because (1) defendants were willing to surrender their passports, (2) they would be subject to home confinement with electronic

5

monitoring and unannounced visits by Pretrial Services, and (3) they agreed to 24-hour surveillance. *Id*. at 77. Accordingly, there was "no reason in this case to think that the proposed conditions of home confinement cannot reasonably mitigate any concerns about defendants' risk of flight." *Id*. at 78.

The same principles apply here.

## II. ANALYSIS OF SECTION 3142(g) FACTORS SUPPORTING PRE-TRIAL RELEASE.

In considering whether any conditions of release would "reasonably assure" the defendant's appearance at trial, the Bail Reform Act mandates that the Court consider a number of factors under Section 3142(g), including: the nature and circumstances of the offense, the history and characteristics of the person, including his ties to the community, and whether the individual poses a danger to the community. 18 U.S.C. § 3142(g).[1] The Government bears the burden of showing that none of these factors can "reasonably" assure the defendant's appearance. *U.S. v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986); *U.S. v. Medina*, 775 F.2d 1398, 1402 (11th Cir. 1985).

### A. Mr. Shiera's Ties to the Community Are Substantial and Militate in Favor of Bail.

A factor to be considered is whether the defendant has "ties to the community." Here, this factor overwhelmingly militates in favor of granting pre-trial release. The ties in this case include (l) his closest family members, (2) real property, and (3) very substantial business assets. Each are discussed below.

---

[1] Notably, these factors, while important, do not ameliorate the mandatory nature of § 3142(e). Although they should be "take[n] into account," bail is still mandated unless "*no condition or combination of conditions* will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" *Id.* at § 3142(e) (emphasis added).

1. **Family Members are Located in the United States**

Courts often look to a defendant's family ties to the community. *See e.g., Ceballo* at *16; *U.S. v. Giordano*, 370 F. Supp. 2d 1256, 1267 (S.D. Fla. 2005); *U.S. v. Sudeen*, No. 02-062 SECTION "L" (5), 2002 U.S. Dist. LEXIS 5061 *7-8 (E.D. La. Mar. 14, 2002). Those ties here include all of Mr. Shiera's immediate family. In fact, virtually every one of his closest family members are located in the United States, including:

- Alexandra Shiera, Mr. Shiera's wife, who is a permanent resident of the United States.

- Fabian, Mr. Shiera's son, who is 5 years old, and a US citizen.

- Carlos, Mr. Shiera's son, who is 24 years old, and living in Boston.

- Fedeerico, Mr. Shiera's step-son, who is 14 years old, and living with Mr. Shiera.

With the exception of Carlos, Mr. Shiera is living with all of the above individuals **at his home in Florida.** Accordingly, Mr. Shiera's status as a foreign national here on a visa should not cloud the essential fact: his immediate family which he loves and whom he cherishes are right here in the United States.

2. **Mr. Shiera owns substantial property in the United States.**

In addition to family ties, courts also consider whether a defendant has real property or other assets in the United States. *See, e.g., Ceballo* at *11-12; *Giordano* at 1267. Again, this factor weighs strongly in favor of releasing Mr. Shiera, who owns a home in Coral Gables, Florida, where he lives with his family. This Coral Gables home constitutes Mr. Shiera's principal place of residence. In addition to his home, Mr. Shiera also purchased the adjoining lot, with the intention of expanding his home sometime in the future. Both his home and adjoining lot have a value of approximately $3 million. *See* PTR at 3.

5049867

010-8175-5655/1/AMERICAS

### 3. Mr. Shiera Owns Substantial Business Interests in the United States.

Another factor to be considered is whether there are other ties to the community, such as business interests. *See, e.g., United States v. Ramirez*, No. 09-20295-CR-SEITZ, 2010 U.S. Dist. LEXIS 87665 *6 (S.D. Fla. July 29, 2010) (noting that "Defendant was self-employed at the time of his arrest, in a business that had little to no value."). Once again, such ties exist in this case, and militate in favor of release.

Mr. Shiera owns several companies (along with others). These include the following:

Northland Automation and Services, located in Florida.

Lam GroupCorp., located in Florida.

ISSGI, located in Florida.

Merla Wellhead Solutions. located in Texas.

These companies have substantial assets in the United States and employ numerous individuals.

### B. Any Combination of Bail Conditions Would Be More Than Sufficient to Assure Mr. Shiera's Appearance.

Where appropriate, a judicial officer must take care to select "*the least restrictive . . . condition, or combination of conditions*" that will reasonably assure appearance. 18 U.S.C. § 3142(c)(1)(B) (emphasis added). Here, there exist several reasonable conditions that that the Court could impose upon Mr. Shiera's release:

1. Mr. Shiera could provide a personal recognizance bond of $2.5 million to be cosigned by three financially responsible individuals, including Mr. Shiera's wife and his two adult children, and to be collateralized by Mr. Shiera's Coral Gables home and/or any additional amount set by the Court.

2. Mr. Shiera will remain in and may not leave the District designated by the Court, and abide by all other travel and movement restrictions the court may impose.

3.  Mr. Shiera will not directly or indirectly associate or have contact with his codefendant.

4.  Mr. Shiera will surrender any and all passports to the FBI.

5.  Mr. Shiera will submit himself to pretrial reporting and/or monitoring as required by the Court.

Mr. Shiera will agree to any combination of the above terms to secure his release pending trial, including any additional conditions required by the Court. Similar pretrial release recommendations are reflected by Mr. Shiera's PTR. PTR at 4-5.

### C. Neither the Charges Against Mr. Shiera Nor His Citizenship Merit a Contrary Result.

Of course, the Court must consider the charges against the accused and his citizenship under 18 U.S.C. § 3142(g). *See, e.g., United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1351-55 (M.D. Fla. 2003). Case law makes clear, however, that the type of charges here—non-violent crimes not fitting any of the remaining specified categories—cannot trump other facts militating in favor of bail. *See, e.g.*, *Giordano* at 1258 ("The statutory scheme as currently constructed, however, does not support the stronger part of the Government's case that the threat of continuing economic fraud triggers a right to detention."). Similarly, Mr. Shiera's citizenship—while relevant—is hardly controlling, and indeed, is outweighed by the fact that he is living in the United States with his family.

### 1. The Criminal Charges Are Not Controlling.

Recently, some of the largest criminal schemes have resulted in determinations that the lead defendants should nevertheless be released on bond. *See, e.g., United States v. Jeffrey Skilling, United States v. Kenneth Lay*, 4:04-cr-00025 (S.D. Tex.) (defendants, charged with overseeing a massive conspiracy, were released with conditions prior to trial); *United States v.*

*Richard Scrushy*, 2:03-cr-00530 (N.D. Ala.) (indictment charged defendant with scheme to defraud investors and sought forfeiture of over $278 million in assets with a maximum possible sentence of 650 years in prison and $36 million in fines; defendant was released with conditions prior to trial); *United States v. Bernard Ebbers*, 1:02-cr-01144 (S.D.N.Y.) (defendant was charged with conspiracy and securities fraud in connection with the collapse of WorldCom, and was released with conditions prior to trial.).

Many defendants indicted under the Foreign Corrupt Practices Act have also enjoyed pretrial release under conditions similar to those proposed by Mr. Shiera.  For instance: *United States v. Joel Esquenazi, Carlos Rodrigues*, *et al.*, No. 09-cr-21010-JEM (S.D. Fla.) involved an extensive bribery scheme involving officials in Haiti's government-owned telecommunications company.  The defendants were granted pretrial release on bond, despite the fact that several co-Defendants (Jean Rene Duperval and Robert Antoine) had close connections to Haiti.  *See* Exhibit A.  *See also United States v. Esquenazi*, 752 F.3d 912 (11th Cir. 2014) (affirming convictions).  Another recent FCPA prosecution from the Southern District of Florida involved Latin Node Inc. ("LatiNode"), a telecommunications company accused of bribing officials in Honduras.  Several LatiNode officers were indicted, and all enjoyed pretrial release on bond. *United States v. Manuel Salvoch*, No. 10-cr-20893 (S.D. Fla.); *United States v. Juan Pablo Vazquez*, No. 10-cr-20894 (S.D. Fla.); *United States v. Jorge Granados* and *Manuel Caceres*, No. 10-cr-20881 (S.D. Fla.).  *See* Exhibit B.  Southern District of Florida precedent regarding individuals facing similar charges to Mr. Shiera therefore counsels in favor of pretrial release in this case.

Many courts outside the Southern District have similarly permitted the pretrial release of FCPA defendants.   For instance, *United States v. Benito Chinea*, No. 14-CR-240-DLC

10

(S.D.N.Y.) and *United States v. Ernesto Lujan*, No. 13-CRIM-671 (S.D.N.Y.) involved bribes paid to officials of Venezuela's state-owned bank in exchange for bond trading work. Chinea and Lujan were granted bail and released pending trial. *See* Exhibit C. In another recent FCPA prosecution, *United States v. Knut Hammarskjold*, No. 1:14-cr-00065 (D. N.J.) and *United States v. Joseph Sigelman*, No. 14-CR-00263-JEI (D. N.J.), two former executives of a British Virgin Islands oil and gas company also eventually received bond amidst allegations of bribing officials from Colombia's state-owned oil company. *See* Exhibit D. Mr. Shiera, who is similarly situated to these individuals, should likewise be granted pretrial release.

### 2. Mr. Shiera's Citizenship is Not Controlling.

After applying the Section 3142(g) factors, multiple courts reviewing bail requests from similarly-situated defendants have granted bail with appropriate conditions. Many of these cases have involved foreign citizens with far less ties to the United States than those enjoyed by Mr. Shiera.

In *Truong Dinh Hung v. United States*, 439 U.S. 1326 (1978) (Brennan, J.) (granting bail), the defendant was denied bail because he was a citizen of Vietnam who had no permanent residence in the United States, he had convicted of transmitting classified information to the Vietnamese ambassador in Paris, and the United States would have no means to procure his return for sentencing if he returned to Vietnam. *Hung*, 439 U.S. at 1327. Justice Brennan nevertheless found that while such considerations "suggest opportunities for flight, they hardly establish an inclination on the part of the applicant to flee." *Id.* at 1329. Hung's ties to the United States, his close relationship with his sister, the equity in his sister's house that had been posted as collateral for the bond, and the affidavits showing Hung's character and reliability as a risk for bail called for a continuation of bail at $250,000.

5049867

010-8175-5655/1/AMERICAS

There are a large number of cases dealing with schemes having a far greater impact than that alleged here, and involving foreign nationals, who were nevertheless granted pre-trial release. For instance, in the "Libor-fixing scheme" impacting large segments of the world-wide financial system, a British trader was released on a $500,000 personal appearance bond secured only by $40,000 in cash, and even allowed to keep his passport for travel between the United States, Great Britain and France. *See United States v. Robson, et al.*, Docket No. 1:14-mj-0069A (S.D. N.Y.) (granting bail as to defendant Conti) (attached as Exhibit E). And in *United States v. Tappin*, No. 3:07-000249 (W.D. Tex.), the defendant, a citizen of Great Britain, was accused of trying to illegally export components of Hawk Air Missiles, yet the Court granted pre-trial release based principally on a $1,000,000 bond secured by $50,000, together with electronic monitoring. *See* Exhibit F.

Other examples abound. *See, e.g.*, *United States v. Birmingham, et al.*, No. H:02-cr-00597 (S.D. Tex.) (as to defendant Mulgrew: British banker granted bail in an "Enron-like" scheme based on a personal appearance bond of $1,000,000 secured by $200,000) (attached as Exhibit G); *United States v. Paltzer*, 1:13-cr-00282 (S.D. N.Y.) (U.S. defendant who was a resident of Switzerland was extradited in a case alleging massive concealment of assets in Switzerland to avoid U.S. tax laws; defendant was granted pre-trial release based on a $2,000,000 personal appearance bond secured by a piece of art) (attached as Exhibit H); *United States v. Norris*, No. 2:03-cr-00632-ER (E.D. Pa.) (bail granted as to the CEO of a company located outside the U.S. in large price fixing scheme based on a personal appearance bond of $1,000,000 secured by $200,000 cash) (attached as Exhibit I).

Bond was also preferred over pretrial detention in *U.S. v. Zollino*, No. SA-01-CR-180 (1) EP, 2001 U.S. Dist. LEXIS 6193 (W.D. Tex. Apr. 19, 2001), a case featuring "serious fraud and

money laundering offenses involving millions of dollars of missing investments[.]" *Id.* at *1. Zollino was "a foreign national with frequent foreign travel and wealthy family members in Mexico, and [faced] a significant prison sentence, fines and restitution if convicted." *Id.* On these facts, the *Zollino* magistrate rejected the Government's position that pretrial detention was required. *Id.* at *3-4. Instead, the magistrate ordered the defendant to "disclose the particulars of his financial situation in sufficient detail to enable me to determine a bond amount that will reasonably ensure that the threat of loss of the security posted will serve as an adequate deterrent to defendant's flight."[2] *Id.* at *3.

Mr. Shiera's citizenship is therefore not a controlling factor. Instead, this Court should look to Mr. Shiera's community ties, U.S. business activities, and assets. This Court should also look to the recommendation of pretrial release contained in Mr. Shiera's PTR. These factors compel the finding that Mr. Shiera is not a flight risk, and pretrial release under reasonable bond conditions is therefore appropriate in this case.

## CONCLUSION

For the aforementioned reasons, the application for bail should be granted.

Dated:  December 24, 2015.

                                              Respectfully submitted,

                                              /s/ Samuel Rosenthal
                                              Samuel Rosenthal, Esq.
                                              *Admitted Pro Hac Vice*
                                              samuel.rosenthal@squirepb.com
                                              Joseph Walker, Esq.

---

[2] Zollino failed to comply with this order, and the district court eventually ordered detention. *United States v. Zollino*, 31 Fed. Appx. 159 (5th Cir. 2001) (unpublished opinion), opinion *available at* http://www.ca5.uscourts.gov/opinions/unpub/01/01-51114.0.wpd.pdf

*Admitted Pro Hac Vice*
joseph.walker@squirepb.com
Squire Patton Boggs LLP
2550 M Street NW
Washington DC 20037
(202) 457-6000

P. Jan Kubicz, Esq.
FL Bar No.  84405
jan.kubicz@squirepb.com
Squire Patton Boggs LLP
200 South Biscayne Blvd, Suite 4700
Miami, FL  33131
T - (305) 577-2962

*Counsel for Defendant Abraham Shiera*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum in Support of Pretrial Release was served by the CM/ECF, on December 24, 2015, on all counsel or parties of record on the service list.

/s/ Jan Kubicz_____
P. Jan Kubicz, Esq.

5049867

010-8175-5655/1/AMERICAS